IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROBERT DEFRANCESCHI and | § | |
| ELENA RIEDO | § | |
| | § | |
| V. | § | ACTION NO. 4:10-CV-455-Y |
| | § | |
| WELLS FARGO BANK, N.A., and | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| as Trustee for the Banc of America | § | |
| Funding 2007-6 Trust | § | |

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT,
DENYING MOTION TO STRIKE, AND OVERRULING OBJECTIONS

Pending before the Court are Defendants' Motion for Summary Judgment (doc. 16), filed

March 24; Motion to Strike (doc. 26), filed April 28; and Supplemental Motion for Summary

Judgment (doc. 30), filed June 13.  Also pending are Plaintiffs' Objections (docs. 19, 32) to

Defendants' summary-judgment evidence, filed April 14 and July 5.  The Court GRANTS the

summary-judgment motions, DENIES the motion to strike, and OVERRULES the objections.

I.  BACKGROUND[1]

On January 23, 2007, plaintiffs Robert DeFranceschi and Elena Riedo (collectively,

"Plaintiffs") bought property located at 629/631 Melbourne Road, Hurst, Texas ("the property").

Plaintiffs executed a note in the amount of $127,500, with American Brokers Conduit ("ABC")

listed as the lender.  (Pls.' App. 9.)  Plaintiffs also executed a deed of trust granting ABC a security

interest in the property as the lender.  (Pl.'s App. 11-12.)  In the deed of trust, ABC simultaneously

assigned its security interest in the property to Mortgage Electronic Registration Systems, Inc.

("MERS"), as ABC's nominee:

---

[1]The majority of the facts stated in this order are undisputed.  But where they are disputed, they are presented
in the light most favorable to Plaintiffs.

> The beneficiary of this Security Instrument is MERS (solely as nominee for [ABC] and [ABC's] successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to [ABC or any holder of the note who is entitled to receive payments under the note]: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of [Plaintiffs'] covenants and agreements under the Security Instrument and the Note.

(Pl.'s App. 12.)  On March 8, 2007, ABC endorsed and assigned the note to defendant U.S. Bank National Association, as trustee for the Banc of America funding 2007-6 trust ("US Bank").[2] (Defs.' Supp. App. 29, 31-32.)

In March 2009, Plaintiffs fell behind on their payments.  (Defs.' App. 2.)[3]  On April 2, US Bank appointed defendant Wells Fargo Bank, N.A. ("Wells Fargo"),[4] to act as servicer of the note. (Defs.' Supp. App. 2.)  Also during April, Defendants allegedly began charging Plaintiffs' account for force-placed insurance[5] (even though Plaintiffs already had insurance), but never fully refunded to Plaintiffs the insurance charges they paid.  (Pls.' App. 2.)  On April 9, Wells Fargo, as servicer of the note, informed Plaintiffs that the note was in default and that it, on US Bank's behalf, intended to accelerate the note.  (Defs.' App. 23-24.)  On May 10, Wells Fargo accelerated the note and notified Plaintiffs of its intent to foreclose on the property on June 1.  On June 4, MERS, as ABC's nominee, assigned its interest in the deed of trust to US Bank.  (Am. Compl. 3; Defs.' App. 21-22.) Plaintiffs allege that [MERS's] "assignment of the deed of trust also contained language that the

---

[2]Plaintiffs object to the evidence Defendants' submitted to show the date of the note assignment.  But as discussed below in section IV, this evidence is sufficient to prove the date of the assignment.  *See* Fed. R. Civ. P. 56(c)(4).

[3] Plaintiffs' last payment on the note was made on March 10, 2010, which was applied to the payment due for April 2009.  (Defs.' App. 2.)

[4]The Court will refer to US Bank and Wells Fargo collectively as "Defendants."

[5]A force-placed policy allows the lender to protect its exposure on a property up to the amount of the mortgage on the date of issuance when the owner fails to maintain homeowner's insurance.  *See Williams v. Certain Underwriters at Lloyd's of London*, 398 Fed. Appx. 44, 45 (5th Cir. 2010); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 624 (N.D. Tex. 2010) (Lynn, J.).

assignment also transferred any and all notes described in the deed of trust."  (Am. Compl. 3.)
Indeed, MERS's recorded assignment is entitled "ASSIGNMENT OF NOTE AND DEED OF
TRUST." (Defs.' App. 21.)

Also in June, Plaintiffs contacted America's Servicing Company ("ASC")[6] to ask for a loan
modification and provided their financial information.  (Pls.' App. 2.)  Wells Fargo pre-approved
a modification at that time ("the first modification").  (Pls.' App. 2.)  On July 7, Plaintiffs received
a notice that the property was scheduled to be sold August 4.  (Pls.' App. 3.)  Plaintiffs then
contacted Wells Fargo about the first modification and were told it was still under review and to
make no payments on the loan.  (Pls.' App. 3.)  In late July, Wells Fargo requested additional
information needed to process the first modification request, which Plaintiffs sent.  (Pls.' App. 3;
Am. Compl. 4.)  Wells Fargo postponed the foreclosure sale and rescheduled it for September 1.
(Pls.' App. 3.)

On August 21, Plaintiffs received a letter from Wells Fargo stating that the first modification
request continued to be under review.  On August 28, Wells Fargo notified Plaintiffs that they had
been approved for a loan modification and that they must make three payments of $1,287.34 in
October, November, and December.  Wells Fargo told Plaintiffs that they would receive more
information about the first modification in the mail.  (Pls.' App. 4.)  The foreclosure sale was
postponed until October 6, and then postponed again until November 3.  (Pls.' App. 4.)

In October, when Plaintiffs did not receive the promised information, they contacted Wells
Fargo.  Wells Fargo told Plaintiffs that they had mailed the information and that Wells Fargo had
closed Plaintiffs' first modification application on October 13 because Plaintiffs had not made the
October payment.  Wells Fargo told Plaintiffs that they could not then make the October payment

---

[6]At the time, ASC handled Wells Fargo's loan-servicing duties.  (Pls.' App. 2.)

to reinstate the first modification.  (Pls.' App. 4.)  Later that month, Plaintiffs received notice that the foreclosure sale had been moved to December 1.  On November 30, Plaintiffs called Wells Fargo "to verify our account status" and, from that conversation, believed that "the foreclosure sale was . . . put on hold."  (Pls.' App. 5.)

On January 12, 2010, Plaintiffs called Wells Fargo to update their financial information to qualify for another loan modification ("the second modification").  Once again, Wells Fargo pre-approved the second modification and told Plaintiffs that they needed to make three payments in February, March, and April.  As before, Wells Fargo promised to mail Plaintiffs more specific information about the second modification. (Pls.' App. 5.) This time, Plaintiffs received the second-modification information and returned the required signed documents to Wells Fargo on January 30. Plaintiffs made the February payment under the second modification.

On March 27, Plaintiffs received a letter from Wells Fargo stating that the second modification was not possible because their monthly income was too high.  (Pls.' App. 5.)  On April 10, Plaintiffs called Wells Fargo to point out Wells Fargo's alleged error in calculating Plaintiffs' income.  Wells Fargo told Plaintiffs to apply a third time for a loan modification.  (Pls.' App. 5.) Wells Fargo told Plaintiffs at that time that their income, which was the same income reported for the first and second modifications, would not qualify Plaintiffs for a third modification.  (Pls.' App. 5-6.)

On April 2, Plaintiffs received a notice of default.  (Pls.' App. 6.)  On May 10, Wells Fargo, on behalf of US Bank, accelerated the note and notified Plaintiffs that a foreclosure sale would occur on June 1.  (Defs.' App. 26.)  On May 28, Plaintiffs filed a verified petition in a state court raising wrongful-foreclosure claims.  The state court entered a temporary restraining order preventing the foreclosure.  Defendants removed the suit to this Court based on diversity jurisdiction.  *See* 28

U.S.C. § 1332.  Plaintiffs filed an amended complaint against Defendants and raised the following claims: (1) breach and anticipatory breach of contract, (2) violations of the Texas Finance Code, (3) unreasonable collection efforts, (4) negligent misrepresentation, and (5) gross negligence.  Plaintiffs seek a declaration that Defendants are not authorized to foreclose on the property and that the acceleration of the note was unlawful.  Defendants seek judgment as a matter of law.

## II.  SUMMARY-JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the movant establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is considered genuine if it is real and substantial as opposed to merely formal or a sham.  *See Brazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001).  A material fact is one that could affect the outcome of the suit under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To show that a particular fact is or cannot be genuinely in dispute, a party must support the assertion either by (1) citing to particular parts of materials in the record, such as depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, (2) showing that the materials cited do not establish the absence or presence of a genuine dispute, or (3) showing that the adverse party cannot produce admissible evidence to support the fact.  *See* Fed. R. Civ. P. 56(c)(1).  The Court only is required to consider the materials cited by the parties, but may consider other materials in the record.  *See id.* 56(c)(3).  The Court views the considered materials in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor.  *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010).  But if the evidence is merely colorable or is not significantly

5

probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50.

## III.  DISCUSSION

### A.  BREACH OF CONTRACT AND ANTICIPATORY BREACH

In their amended complaint, Plaintiffs allege that Defendants breached the deed-of-trust contract by (1) failing to accept any payments or reinstate the account through Plaintiffs' attempted payment of the arrearage amounts during Defendants' review of Plaintiffs' loan-modification requests and (2) appointing a substitute trustee and initiating foreclosure proceedings when Defendants had no authority to do so.  To prevail on their breach-of-contract claim, Plaintiffs must show (1) the existence of a valid contract; (2) performance or tendered performance by Plaintiffs; (3) breach of the contract by Defendants; and (4) damages sustained as a result of the breach.  *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  Regarding anticipatory breach of contract, Plaintiffs must establish (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party.  *See Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004).  As discussed below, Plaintiffs have failed to raise a genuine dispute as to any material fact regarding their breach-of-contract allegations.

1. Import of "Split" Note and Deed of Trust and Defendants' Authority to Foreclose

Plaintiffs allege that Defendants cannot enforce the deed of trust and foreclose on the property because MERS is an assignee under the deed of trust, but is not a payee of the note.  (Am. Compl. 8-11.)  Plaintiffs argue that the deed of trust does not provide that MERS could transfer the note, which renders the language in the assignment purporting to transfer the note ineffective: "MERS was never a holder or owner of the Note in question, therefore [MERS] could not validly

assign the Note to U.S. Bank, and U.S. Bank could not then seek to enforce the Note." (Am. Compl. 8; Pls.' Resp. 29.) Defendants argue that the assignment of the note also assigned the deed of trust as a matter of law because the note and the deed of trust are inseparable. (Defs.' Supp. Summ. J. Mot. 5.)

Defendants cite to case law and the Uniform Commercial Code in support of their argument that the deed of trust follows the note. Plaintiffs do not dispute this proposition, but argue that the converse is not true, i.e., the note does not automatically follow the deed of trust when only the deed of trust is assigned. Under Texas law, a deed of trust is a mortgage with a power to sell on default. *See In re Kleibrink*, 346 B. R. 734, 759 n.23 (Bankr. N.D. Tex. 2006) (Houser, Bankr. C.J.); *Starcrest Trust v. Berry*, 926 S.W.2d 343, 351 (Tex. App.—Austin 1996, no writ). A mortgage created by a deed of trust is an interest created by a written instrument providing security for payment. The security is established by a note. *See* 30 Tex. Jur. 3d *Deeds of Trust and Mortgages* §§ 1-2 (2007). Because the deed of trust or mortgage has no legal effect apart from the debt or obligation, any transfer of the deed of trust without the note automatically passes the debt. *See Teas v. Republic Nat'l Bank*, 460 S.W.2d 233, 243 (Tex. Civ. App.—Dallas 1970, writ ref'd n.r.e.). Indeed, the note provides that its protections to the lender are enforced through the deed of trust:

> In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated the same date as this Note, protects the Note Holder from possible losses which might result if [Plaintiffs] do not keep the promises which [Plaintiffs] make in this Note. That Security Instrument describes how and under what conditions [Plaintiffs] may be required to make immediate payment in full of all amounts [Plaintiffs] owe under this Note.

(Pls.' App. 10.) Further, Texas courts "have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011).

The note was executed by Plaintiffs in favor of ABC, the original lender. Simultaneously, a deed of trust was executed naming MERS as the nominal beneficiary acting on behalf of ABC or its successors and assigns. ABC assigned the note to US Bank, and MERS assigned the deed of trust to US Bank. The servicing rights under the note and deed of trust were transferred to Wells Fargo, and Wells Fargo contracted with ASC to perform the servicing. Thus, US Bank holds the note and deed of trust, and Wells Fargo and its contractor, ASC, are the authorized loan servicers on behalf of US Bank. MERS was the nominal beneficiary under the deed of trust as agent for ABC and its successors and assigns, which includes US Bank. Wells Fargo is authorized to act on behalf of the holder of the deed of trust, US Bank, to begin foreclosure of the property, including appointing a substitute trustee. *See Wigginton v. Bank of N.Y. Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *2 n.2 (N.D. Tex. July 7, 2011) (Fish, Sr. J.); *Allen v. Chase Home Fin., LLC*, No. 4:11-CV-223, 2011 WL 2683192, at *3-4 (E.D. Tex. June 10, 2011); *Eskridge v. Fed. Home Loan Mortg. Corp.*, No. W-10-CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011); *King v. Am. Mortg. Network*, No. 1:09-CV-162-DAK, 2010 WL 3516475, at *3 (D. Utah Sept. 2, 2010). In other words, a transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions. *See Eskridge*, 2011 WL 2163989, at *5. Because the deed of trust specifically provided that MERS would have the power of sale, MERS had the power of sale that was passed to US Bank upon MERS's assignment. *See Richardson v. CitiMortgage, Inc.*, No. 6:10-CV-119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010). (Defs' App. 6.) In short, there is no merit to Plaintiffs' argument that the deed of trust and note were "split," rendering any attempted foreclosure defective. *See Reardean*, 2011 WL 3268307, at *4. Further, US Bank was a holder in due course as argued by Defendants. (Supp. Summ. J. Mot. 6.)

Additionally, Plaintiffs do not have standing to challenge the assignments because they were

not a party to those assignments.  *Eskridge*, 2011 WL 2163989, at *5.  Thus, Plaintiffs' arguments

that US Bank and Wells Fargo do not have authority to foreclose the deed of trust because the deed

of trust and note were "split" are without merit.  Finally, Defendants have established that there is

no genuine dispute as to any material fact regarding Plaintiffs' anticipatory-breach-of-contract claim.

(Summ. J. Mot. 10; Defs.' Reply 7-8.)

### 2.   Loan Modification

Plaintiffs next assert that Defendants breached the contract because they would not allow

Plaintiffs to reinstate the note by paying the arrearage amount.  (Am. Compl. 10.)  But Defendants

were under no contractual obligation to accept any attempted partial payments.  (Defs.' App. 8 at

¶ 1.) Further, any loan modification had to be in writing to be effective. *See* Tex. Bus. & Com. Code

Ann. § 26.02(b), (d) (West 2009); *Deuley v. Chase Home Fin., LLC*, No. H-05-4253, 2006 WL

1155230, at *2 (S.D. Tex. Apr. 26, 2006).

Plaintiffs also allege that Defendants waived their right to accelerate the note and foreclose

on the property by telling Plaintiffs not to make payments on the note while they were awaiting

approval of their loan-modification requests.  The deed of trust specifically provides that "[a]ny

forbearance by Lender in exercising any right or remedy including, without limitation, Lender's[7]

acceptance of payments from third persons, entities or Successors in Interest of Borrower or in

amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right

or remedy."  (Defs.' App. 12 at ¶ 12.)  Further, any oral instruction given to Plaintiffs is

unenforceable.  (Defs.' Summ. J. Br. 10.)

### B.   Violation of Texas Finance Code

---

[7] Contrary to Plaintiffs' arguments addressed above, ABC was not the lender at the time of Plaintiffs' default based on the assignments to US Bank.

Plaintiffs allege that because Wells Fargo[8] is a debt collector, it was required by the finance

code to be bonded by the Texas Secretary of State.  *See* Tex. Fin. Code Ann. § 392.101 (West 2006).

(Am. Compl. 12.)  Section 392.101 requires third-party debt collectors to be bonded.  Under the Fair

Debt Collection Practices Act, which the finance code relies on to define its terms, a third-party debt

collector does not include a mortgage-servicing company or similar individuals if the debt was not

in default at the time it was assigned.  *See* 15 U.S.C. § 1692a(6); Tex. Fin. Code Ann. § 392.001(7);

*Niera v. Frost Nat'l Bank*, No. 04-09-224-CV, 2010 WL 816191, at *5 (Tex. App.—San Antonio

Mar. 10, 2010, pet. denied).  Plaintiffs assert that because MERS assigned the note after Plaintiffs

were in default, Wells Fargo was a third-party debt collector and is subject to the bond requirement.

But, as discussed above, the note and deed of trust were not "split"; thus, assignment of the deed of

trust before default necessarily assigned the duties provided for in the note; thus, Wells Fargo is not

a third-party debt collector subject to section 392.101.[9]

## C.  UNREASONABLE COLLECTION EFFORTS

Plaintiffs allege that Defendants' collection efforts were unreasonable because Defendants

had no authority to foreclose under the deed of trust.  (Am. Compl. 12 at ¶ 42.)  As discussed above,

Defendants were given the authority to foreclose because the deed of trust and the note were not

"split."

Plaintiffs also assert that Defendants failed to provide Plaintiffs with a reinstatement amount

and improperly charged Plaintiffs for force-placed insurance.  (Am. Compl. 12-13 at ¶ 42.)  To

recover on their claim for unreasonable collection efforts, Plaintiffs must show that Defendants'

actions in attempting to collect on the debt were part of "a course of harassment that was willful,

---

[8]Plaintiffs did not raise this claim against US Bank.  (Am. Compl. 12.)

[9]The Court also notes that Wells Fargo's preemption argument under the Federal Banking Act has merit, rendering the state bond requirement inapplicable.  (Defs.' Reply 9-10.)

wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868-69 (Tex. App.—Dallas 2008, no pet.). A claim for unreasonable collection efforts is an intentional tort. *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (Lynn, J.). To determine if a defendant's collection efforts were unreasonable, the Court looks at the facts on a case-by-case basis. *See De Francheschi v. BAC Home Loans Servicing, LP*, No. 3:09-CV-1667-K, 2011 WL 1456849, at *5 (N.D. Tex. Apr. 14, 2011) (Kinkeade, J.).

Plaintiffs argue that by improperly applying force-placed insurance and late fees to their account, Defendants attempted to collect a debt they were not owed. (Resp. 41-42.) Debt-collection efforts are tortious when lenders attempt to collect debts that are not actually owed. *See Narvaez*, 757 F. Supp. 2d at 635. But if money is, in fact, owed to the lender, an unreasonable-collection-efforts claim cannot survive even if the plaintiff disputes the amount of that debt. *See id.* Here, Plaintiffs admit that they did not make all required payments under the deed of trust and note. (Resp. 3; Pls.' App. 2; Am. Compl. 4 at ¶ 12.) Further, Plaintiffs' evidence at most establishes negligence on Defendants' part regarding their collection efforts. Evidence of negligence is insufficient to support a claim for unreasonable collection efforts. *See id.* at 636. Finally, Defendants' alleged failure to provide information cannot be categorized as a collection effort. *See id.* Thus, Plaintiffs have provided insufficient evidence to rebut Defendants' evidence and, thus, to raise a genuine dispute as to any material fact regarding their claim for unreasonable collection efforts.

## D. NEGLIGENT MISREPRESENTATION

Plaintiffs allege that Defendants made false representations regarding the status of their mortgage. (Am. Compl. 14.) To establish negligent misrepresentation, Plaintiffs must show that

11

(1) the representation is made by a defendant in the course of his business or in a transaction in which he has a pecuniary interest, (2) the defendant supplies false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representations. *See Fed. Land Bank. Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The false information complained of in a negligent-misrepresentation claim "must be a misstatement of an existing fact rather than a promise of future conduct." *Scherer v. Angel*, 253 S.W.3d 777, 781 (Tex. App.— Amarillo 2007, no pet.). Defendants correctly argue that their alleged promise to modify the note and delay foreclosure in the future is not a statement of existing fact. (Summ. J. Mot. 14.) The Court accordingly agrees that Plaintiffs have failed to raise a genuine dispute as to any material fact regarding their negligent-misrepresentation claim. *See De Francheschi*, 2011 WL 1456849, at *6; *see also BY Water Supply Corp. v. Angel*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied).

Additionally, Plaintiffs' tort claim for negligent misrepresentation flows from the contractual relationship between Plaintiffs and Defendants. But for the existence of this contractual relationship, Plaintiffs' non-contractual claim of negligent misrepresentation would not exist. Texas courts consistently have prohibited tort claims if the parties' relationship and attendant duties arise from a contract. *See, e.g., Quintanilla v. K-Bin, Inc.*, 993 F. Supp. 560, 563 (S.D. Tex. 1998); *Sw. Bell Tel. Co. v. Deanne*, 809 S.W.2d 493, 493-95 (Tex. 1991); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 777 (Tex. App.—Corpus Christi 2003, no pet.). It is clear that Plaintiffs' negligent-misrepresentation claim sounds in contract; thus, a tort cause of action is unavailable to Plaintiffs. *See i2 Techs., Inc. v. DARC Corp.*, No. 3:02-CV-327-H, 2003 WL 22205091, at *5-6 (N.D. Tex. Sept. 23, 2003) (Sanders, Sr. J.).

## E.  GROSS NEGLIGENCE

Plaintiffs also allege that Defendants' actions in promising a modification and delayed foreclosure were grossly negligent.  In Texas, gross negligence is a heightened form of negligence that requires a plaintiff to allege and ultimately prove (1) an act or omission that, viewed objectively from the actor's standpoint, involved an extreme degree of risk and (2) the actor had actual, subjective awareness of the risk and proceeded anyway with a conscious indifference.  *See Thrash v. Ocwen Loan Servicing, LLC (In re Thrash)*, 433 B.R. 585, 600 (N.D. Tex. 2010) (Jernigan, Bankr. J.).  Further, Plaintiffs must proffer evidence that their damages arising from Defendants' gross negligence are more than alleged economic harm and mental anguish or anxiety.  Plaintiffs' summary-judgment evidence is that, "as a result of . . . Defendants' conduct," DeFranceschi suffered "substantial stress," "loss of sleep," "constant worrying," "day and night anxiety," and "tension in [his] marital relationship" with Riedo.  (Pls.' App. 7.)  This is insufficient evidence to raise a genuine dispute of a material fact regarding gross-negligence damages because such evidence shows mere economic harm and mental anguish and anxiety.  *See id.* at 598-601; *see also Motten v. Chase Home Fin.*, ___ F. Supp. 2d ____, 2011 WL 2566092, at *12 (S.D. Tex. June 28, 2011).  There is no summary-judgment evidence of Riedo's gross-negligence damages.

## F.  DECLARATORY JUDGMENT AND ACCOUNTING

The federal declaratory judgment act is a procedural device that creates no substantive rights. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).  Thus, the act provides no relief unless there is a justiciable controversy between the parties. *See id.*  As stated by the Fifth Circuit, a declaratory-judgment plaintiff must allege a "substantial and continuing" controversy:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.  Based on the facts alleged, there must be a

substantial and continuing controversy between two adverse parties. The plaintiff
must allege facts from which the continuation of the dispute may be reasonably
inferred. Additionally, the continuing controversy may not be conjectural,
hypothetical, or contingent; it must be real and immediate, and create a definite,
rather than speculative, threat of future injury.

Past exposure to illegal conduct does not in itself show a present case or
controversy regarding injunctive relief . . . if unaccompanied by any continuing,
present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must
demonstrate either continuing harm or a real and immediate threat of repeated injury
in the future. Similar reasoning has been applied to suits for declaratory judgment.

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citations and quotations omitted). In other words,

a declaratory judgment is merely a form of relief that a court may grant based on an underlying

claim. *See Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*

*(HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990). As determined above, there is no genuine dispute of

material fact regarding Plaintiffs claims; thus, there is no underlying claim for the Court to

adjudicate. *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, No. 10-11010, 2011 WL 1332039,

at *2 (5th Cir. Apr. 7, 2011) (per curiam). Likewise, because Plaintiffs' claims under the Texas

declaratory-judgment act are remedial or dependent on their other claims, it is not an independent

cause of action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2008); *Tex. Natural Res.*

*Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). An accounting also is an

equitable remedy that is not an independent cause of action. *See Henry v. CitiMortgage, Inc.*, No.

4:11-CV-083, 2011 WL 226166, at *8 (E.D. Tex. May 10, 2011).


## IV.  OBJECTIONS TO SUMMARY-JUDGMENT EVIDENCE

Defendants move to strike portions of Plaintiffs' summary-judgment evidence. Because the

Court has found no material fact that is genuinely in dispute as to Plaintiffs' claims, the Court need

not address Defendants' motion and denies it as moot.

But Plaintiffs object to evidence Defendants proffered in support of their summary-judgment motions.  Specifically, Plaintiffs argue that the affidavits of Mary Ellen Brust, a Wells Fargo litigation specialist, contain legal conclusions and show a lack of personal knowledge.  (Resp. 8-10; Supp. Resp. 3-7; Sur-Reply 1-4.)  Brust's affidavits specifically state that they were based on Brust's personal knowledge and that the information was based on her review of the documents provided to her as a Wells Fargo litigation specialist.  (Defs.' App. 1-2; Defs.' Supp. App. 28-29.)  This is sufficient to justify consideration of Brust's statements based on her personal knowledge.  *See* Fed. R. Civ. P. 56(c)(4); *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992).  Contrary to Plaintiffs' arguments (Supp. Resp. 6), there is no requirement that Brust must have been employed by Wells Fargo at the time the note and deed of trust were created or assigned.  *See, e.g., Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 544 n.13 (5th Cir. 2002), *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009).

Plaintiffs also object to the document attached to Brust's supplemental affidavit that purports to show that ABC assigned the note to US Bank on March 8, 2007.  Plaintiffs' objection is based on the fact that the assignment is not dated, but Brust states in her supplemental affidavit that the assignment from ABC to US Bank occurred on March 8, 2007.  Once again, Brust avers that the facts in her supplemental affidavit are based on her personal knowledge arising from her review of the documents and from her status as a Wells Fargo employee.  Defendants' arguments are without merit.

## V.  CONCLUSION

Plaintiffs have failed to raise a genuine dispute as to any material fact regarding their claims arising out of Defendants' attempts to collect Plaintiffs' mortgage debt.  Defendants' motion to

strike is denied as moot, and Plaintiffs' evidentiary objections are overruled.  Thus, Defendants are entitled to judgment as a matter of law.[10]

SIGNED August 31, 2011.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[10]Of course, the June 2012 trial setting is CANCELLED.